IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON


UNITED STATES OF AMERICA


v.                                    CRIMINAL NO.   2:20-cr-00054


NEDELTCHO VLADIMIROV


## TRIAL BRIEF

The United States of America hereby offers this Trial Brief
for the Court's review and consideration.

## FACTUAL BACKGROUND

The United States anticipates that trial testimony will bring
out the following facts:[1]

### A.    Fencing Schemes, Generally

A "fence" is an individual who knowingly buys stolen goods to
later resell them for profit.  The "fence" acts as a middleman
between thieves and the eventual buyers of stolen goods who may
not be aware that the goods are stolen.  The "booster" steals the
items for the fence and is willing to accept a low profit margin
to reduce his risks by instantly disposing of the stolen items to
disassociate from the criminal theft act that procured it.  After

---

[1] This factual background and summary of expected evidence
does not cover every fact and witness that the United States
expects will support the charges.

the sale, the "fence" recoups his investment by disguising the stolen nature of the goods (via methods such as repackaging and altering/effacing serial numbers) and reselling the goods as near to the retail price as possible without drawing suspicion. This process often relies on a legal business, such as an eBay site, to launder the stolen goods by intermixing them with legally purchased items of the same type. The "fence" makes significant profits with stolen merchandise because he is able to secretly pay "boosters" a very low price for stolen goods that cannot be easily sold on the open markets.

In this case, Defendant operated as a "fence" and the "boosters" were his co-conspirators.

### B. Defendant's Scheme to Sell Stolen Items on eBay

Beginning in late 2016, retail stores in the South Charleston area, including Target, Kroger, CVS, and others, began apprehending repeat shoplifters who were stealing items such as Dyson vacuums, electric razors, and electronics. In post-arrest statements, the shoplifters told law enforcement that they were stealing items that would sell easily on eBay, an online auction site, and providing them to Defendant Nedeltcho Vladimirov. The shoplifters stated that they met with Defendant in the Cross Lanes area and sold the items to Defendant for approximately 30-40% of the eBay sales price. Law enforcement and retail investigators

were able to identify Defendant and match items missing from stores with items sold on Defendant's eBay account.

The United States expects to call several witnesses who will testify that they repeatedly stole items from retail stores in the Southern District of West Virginia to sell to Defendant for 30-40% of the eBay value (i.e. the "boosters").[2] These witnesses will testify that, after each such theft, they arranged a meeting with Defendant, typically at the Speedway gas station at Doc Bailey Road and Big Tyler Road in Cross Lanes, West Virginia.

During each such meeting, Defendant would determine the eBay value by scanning a barcode on the stolen item, looking up the eBay sales history of the item, and then Defendant stated the price Defendant was willing to pay. Defendant paid the witnesses in cash. The witnesses used the cash to purchase controlled substances, typically heroin.

## C.   Defendant's eBay Operation

From late 2016 to early 2020, Defendant operated an eBay account ("nedined@hotmail.com") through which thousands of transactions were conducted and items were then shipped to buyers

---

[2] Each witness was advised by the United States that they were subjects and were not targets of the investigation. To date, these witnesses have not entered into any plea or immunity agreement. Should that change, the United States will provide the appropriate notice to Defendant and the Court.

throughout the United States and foreign counties. City National Bank of West Virginia bank records and Form 1099s from Defendant's Paypal account (linked to Defendant's eBay account) show that Defendant received $549,239.59 in a three-year period (2017-2019).

Defendant sold the stolen items he purchased from the shoplifters on eBay. The eBay records will show that the same types of items sold by the shoplifters were listed for sale on Defendant's eBay account ("nedined@hotmail.com").

Records will further establish that the items Defendant sold were paid for using PayPal, an online payment system, and the sales posted to a PayPal account registered to Defendant. The proceeds from the eBay account were transferred from Paypal to Defendant's City National Bank checking account (x8889). From 2016-2020, Defendant routinely transferred money from his City National checking account (x8889) to a City National savings account (x4623). During the same period, Defendant routinely withdrew cash from his City National checking account (x8889).

Organized Retail Crime Investigators Jose Varela (Regional Manager, CVS Health, Organized Retail Crime Team), Herb Shelton (Organized Retail Crime Investigator, Kroger), and Nicholas Niehaus (Market Investigator, Target Corporation) will each testify as to their involvement in an investigation into Defendant's eBay operation. The witnesses will testify generally

about their training and experience with organized retail fencing operations, including the characteristics and identification of fencing operations. The witnesses will testify as to their investigation of Defendant's eBay operation, including their methods, observations, and how they determined that Defendant's eBay operation was a fencing operation.

United States Secret Service Agents Terry Hedrick, Wade Fleming, and Devon Selbee will testify as to their involvement in the United States Secret Service investigation. The witnesses will testify as to how information concerning Defendant's eBay business was obtained, including business records from eBay, Paypal and banks. The witnesses will further testify as to their involvement in the execution of search and seizure warrants and Defendant's post-arrest statement to law enforcement. The United States will play portions of the post-arrest statement at trial. [3]

United States Secret Service Task Force Officer Jeremy Thompson will testify that he examined the electronic devices seized from Defendant in this case. The witness will testify as to the contents of the devices and the existence of text or call

---

[3] The United States disclosed the full post-arrest statement and notice of its intent to use the evidence at trial on March 30, 2020. ECF 34.

communications between Defendant and the shoplifters during the time of the conspiracy alleged in the Superseding Indictment.

The United States expects that Monica Lundgren (Senior Investigator – North America PROACT & Criminal Investigations Team) will testify that eBay had a policy prohibiting the sale of stolen property in its online marketplace during the timeframe of the conspiracy alleged in the Superseding Indictment.

### D. **Laundering the Proceeds of the Scheme**

Bank records will establish that, in the months leading up to July 2019, more than $10,000 in deposits were made from Paypal into Defendant's City National checking account (x8889). In the same period, more than $10,000 was transferred from Defendant's City National checking account (x8889) to Defendant's City National savings account (x4623). On July 8, 2019, Defendant transferred $155,000 from his City National savings account (x4623) to his City National checking account (x8889). On the same date, Defendant wrote a personal check (#1045) for $155,000 from his City National checking account (x8889) and deposited it into his JPMorgan Chase Bank account (x8197). On July 23, 2019, Defendant transferred $153,000 from his JPMorgan Chase Bank account (x8197) to a bank in Bulgaria.

The United States expects that Financial Analyst Stephen Rowley will testify as to his examination of the records produced

by eBay, Paypal, City National, and JP Morgan Chase Bank in this case and information contained within those records.[4]

## PROCEDURAL POSTURE

On February 24, 2021, a federal grand jury sitting in Charleston, West Virginia, returned a Superseding Indictment against Defendant that charges him with one count of a promotional money laundering conspiracy (Count One), three counts of engaging in monetary transactions in property derived from specified unlawful activity (Counts Two through Four), and one count of mail/wire fraud conspiracy (Count Five). ECF 58.

## ELEMENTS OF THE CRIMES

### E.  Money Laundering Conspiracy (Count 1)

The elements of the crime of conspiracy to commit promotional money laundering (18 U.S.C. § 1956(a)(1)(A)(i)) are:

(1) a conspiracy, agreement, or understanding to commit money laundering was formed or entered into by two or more persons at or about the time alleged;

(2) at some time during the existence or life of the conspiracy, agreement, or understanding, the defendant knew that the property involved represented the proceeds of some form of specified unlawful activity; and

(3) the defendant knowingly and voluntarily joined the conspiracy, agreement, or understanding.

---

[4] As the United States explains in its response to Defendant's motion in limine, Mr. Rowley's testimony is lay testimony under Rule 701 of the Federal Rules of Evidence.

See <u>United States v. Alerre</u>, 430 F.3d 681, 693-94 (4th Cir. 2005).

See also <u>United States v. Singh</u>, 518 F.3d 236, 248 (4th Cir. 2008).

The elements of the object of the conspiracy, promotional money laundering (18 U.S.C. § 1956(a)(1)(A)(i)), are that:

> (1) the defendant conducted or attempted to conduct a financial transaction having at least a minimal effect on interstate commerce or involving the use of a financial institution which is engaged in, or the activities of which have at least a minimal effect on, interstate or foreign commerce;[5]
>
> (2) the property that was the subject of the transaction involved the proceeds of specified unlawful activity;
>
> (3) the defendant knew that the property involved represented the proceeds of some form of unlawful activity; and
>
> (4) the defendant engaged in the financial transaction with the intent to promote the carrying on of specified unlawful activity.[6]

<u>United States v. Wilkinson</u>, 137 F.3d 214, 220 (4th Cir. 1998).

During the scheme, Defendant transferred the proceeds of the scheme from his PayPal account into an FDIC-insured bank account (City National Bank checking x8889). After receipt of the proceeds of the scheme, Defendant withdrew cash from the checking account

---

[5] <u>United States v. Peay</u>, 972 F.2d 71, 75 (4th Cir. 1992) (jury can infer an effect on interstate commerce by banks' status as FDIC-insured institutions).

[6] The United States is not required to trace the proceeds to a particular illegal transaction. <u>See</u> <u>United States v. Stewart</u>, 256 F.3d 231, 249 (4th Cir. 2001).

with the intent to promote the carrying on of the scheme. To promote the scheme, Defendant used the withdrawn cash to conduct additional financial transactions (repeat purchases of stolen items from co-conspirators).[7]

## F.  Spending Statute (Counts 2-4)

Under 18 U.S.C. § 1957, the elements of the money laundering spending statute are that:

(1) the defendant engaged in a monetary transaction which had some effect on interstate or foreign commerce;

(2) the monetary transaction involved criminally derived property with a value greater than $10,000; and

(3) the defendant did so knowingly.

## G.  Specified Unlawful Activity (Counts 1-4)

In this case, the proceeds of some specified unlawful activity ("SUA") were derived from mail and wire fraud (18 U.S.C. §§ 1341 and 1343), as well as transportation of stolen goods (18 U.S.C. § 2314). Defendant engages in SUA by selling stolen items on eBay and shipping the items to buyers across the country and foreign countries. The sales generated proceeds of SUA, which are continually transferred from Defendant's PayPal account into an

_____

[7] The promotion element is satisfied when a defendant pays another person for being involved in an unlawful scheme, because such payments compensate the person for his illegal activities and encourage continued participation. See United States v. Bolden, 325 F.3d 471, 489 (4th Cir. 2003).

FDIC-insured bank account (City National Bank checking x8889). As to Count One, Defendant used the proceeds of SUA to engage in additional financial transactions (additional purchases of stolen items to promote the scheme). As to Counts Two through Four, Defendant continually transferred the proceeds of SUA between his checking and savings accounts and then engaged in monetary transactions of over $10,000.

### H. Comingling of Funds Monetary Transactions (Counts 2-4)

The United States need not prove that all of the money involved in the transaction constitutes the proceeds of the criminal activity; it is sufficient if the United States proves that at least part of the money represented such proceeds. See United States v. Wilkinson, 137 F.3d 214, 222 (4th Cir. 1998) (en banc) ("[W]hen the funds used in a particular transaction originated from a single source of commingled, legally-and illegally-acquired funds, it may be presumed that the transacted funds, at least up to the full amount originally derived from crime, were the proceeds of the criminal activity.").

### I. Fraud Conspiracy (Count 5)

Under 18 U.S.C. § 1349, the elements of the crime of conspiracy to commit mail or wire fraud are:

> (1) two or more persons, in some way or manner, positively or tacitly, came to a mutual understanding to

try to accomplish a common and unlawful plan, that is,
to commit mail fraud or wire fraud;[8] and

(2) the defendant willfully became a member of such
conspiracy.

United States v. Burfoot, 899 F.3d 326, 335 (4th Cir. 2018).

### J.    **Conspiracy (Counts 1 & 5)**

One may be a member of a conspiracy without knowing the full

scope of the conspiracy, or all its members, and without taking

part in the full range of its activities or over the whole period

of its existence. See United States v. Burgos, 94 F.3d 849, 857-

61, 869 (4th Cir. 1996) (en banc).  The conspiracy does not need

a discrete, identifiable organizational structure. See id.  The

fact that a conspiracy is loosely-knit, haphazard, or ill-

conceived does not render it any less a conspiracy. See id.  The

United States need not prove that the defendant knew the

particulars of the conspiracy or all of his co-conspirators. It is

sufficient if a co-conspirator played only a minor part in the

---

[8] The crime of conspiracy to commit mail fraud does not
require proof of an actual mailing. See United States v. Edwards,
188 F.3d 230, 233 n.1. (4th Cir. 1999). Instead, the crime of
conspiracy to commit mail fraud requires, among other things, proof
that the persons charged with the conspiracy reasonably
contemplated the use of the mail or that the persons charged
intended that the mails be used in furtherance of the scheme or
that the nature of the scheme was such that the use of the mail
was reasonably foreseeable. See id.

conspiracy. <u>See id</u>. Thus, a variety of conduct can constitute participation in a conspiracy. <u>See id</u>.

### K. **Willful Blindness**

Defendant may assert the defense that he did not know the items provided to him by the shoplifters were stolen.[9] Evidence at trial will prove Defendant's knowledge that the items were stolen. However, the United States may also prove Defendant acted "knowingly" by proving that Defendant deliberately closed his eyes to what would otherwise have been obvious to him. <u>See</u> <u>1A O'Malley, Grenig & Lee</u>, Federal Jury Practice and Instructions, § 17.09 (6th ed. 2008); <u>United States v. Guay</u>, 108 F.3d 545, 551 (4th Cir. 1997); <u>United States v. Hopkins</u>, 53 F.3d 533 (2d Cir. 1995), <u>cert. denied</u>, 516 U.S. 1072 (1996). Defendant's knowledge of a particular fact may be inferred from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact. <u>See id.</u> In other words, one may not willfully or intentionally remain ignorant of a fact material or important to his conduct to escape the consequences of criminal law. <u>See id.</u> The United States has submitted a proposed jury instruction consistent with this principle of law.

---

[9] Defendant made this statement in his post-arrest interview with U.S. Secret Service Agents.

## ISSUES EXPECTED TO ARISE AT TRIAL

**L.     Statements and Testimony**

The United States intends to introduce various statements of Defendant, as well as those by co-conspirators as evidence in its case-in-chief. Such statements are admissible under the Federal Rules of Evidence.

### 1. *Co-Conspirator Statements Are Not Hearsay*

An out-of-court statement is not hearsay if the statement is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). Out-of-court statements made in furtherance of a conspiracy have historically been considered non-testimonial and therefore do not trigger the Confrontation Clause or the Supreme Court's ruling in Crawford v. Washington, 541 U.S. 36 (2004). See, e.g., United States v. Townley, 472 F.3d 1267, 1273 (10th Cir. 2007)("We find no merit to Appellant's unfounded and unsupported contention that Crawford's instruction on testimonial hearsay somehow eviscerated Federal Rule of Evidence 801(e)(2)(E), especially since rule 801(d)(2)(E) treats declarations by co-conspirators not as an exception to the hearsay rules, but as nonhearsay.").

To admit evidence as a co-conspirator statement, the Court must find "(1) that there was a conspiracy involving the declarant

and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy." United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992).

Statements are in furtherance of the conspiracy when they are "intended to promote the conspiratorial objectives." Townley, 472 F.3d at 1273. Promotion occurs with statements explaining events of importance to the conspiracy to facilitate its operation, statements between co-conspirators providing reassurance, trust and cohesiveness among them, or which inform each other of the status of the conspiracy, and statements by co-conspirators identifying fellow co-conspirators. Id. (citations omitted).

Whether the declarant or the testifying co-conspirator is an indicted or an unindicted co-conspirator is irrelevant for purposes of Rule 801(d)(2)(E). See, e.g., United States v. Adkins, 842 F.2d 210, 213 (8th Cir. 1988). The party offering the statements must establish these two factual issues by a preponderance of the evidence. Id. (citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)).

In deciding these factual issues, the Court may consider the out-of-court statements sought to be admitted in determining the existence of the conspiracy and may consider those statements in

conjunction with other evidence. Id. (citing Bourjaily, 483 U.S. at 175); United States v. Neal, 78 F.3d 901, 905 (4th Cir. 1996).

## 2. *Defendant's Admissions Are Admissible*

A statement is not hearsay if the statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity or . . . (C) a statement by a person authorized by the party to make a statement concerning the subject. Fed. R. Evid. 801(d)(2)(A) and (C). This rule extends to both oral and written statements of defendant. See United States v. Williams, 837 F.2d 1009, 1013 (11th Cir. 1988); Fed. R. Evid. 801(d)(2)(C).

While the United States may introduce Defendant's out-of-court statements into evidence, the Defendant or any defense witness may not. Such statements are hearsay pursuant to Rule 801 and are not "admissions by a party opponent" under Rule 801(d)(2) when offered by the party himself, rather than the party's "opponent." United States v. Wilkerson, 84 F.3d 692, 696 (4th Cir. 1996)("Admissions by a party-opponent are not considered hearsay and therefore can be admitted against that party . . . . The rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party."); see also United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003)("[W]hile the Government was free

to introduce the statement as an admission by a party-opponent, see Fed. R. Evid. 801(d)(2)(A), [the defendant] had no right to introduce it on his own.").

Pursuant to the Rules outlined above, the United States will seek to introduce portions of statements at trial, some of which other witnesses will testify to, others which were audio recorded. The United States will exclude Defendant's self-serving statements, irrelevant material, and personal identifying information, such as Defendant's Social Security number and date of birth.

## M. **Testimony Concerning Business Records**

The United States expects to call a witness from eBay, Paypal, and banks to lay the proper foundation for business records that the United States will seek to admit. These witnesses will testify about the data contained in these records and how this data is generated. These witnesses will also provide a general description of the services the businesses provide. These business records are admissible under the hearsay exception Federal Rule of Evidence 803(6).

## N. **Expert Testimony Concerning Fencing Operations**

Federal Rule of Evidence 702 permits the admission of expert testimony where "(1) that the expert ha[s] 'specialized knowledge [that] will assist the trier of fact'; (2) that the expert be

qualified to testify because of 'knowledge, skill, experience, training or education'; (3) that the witness base his testimony upon 'sufficient facts or data'; and (4) that the witness has used 'reliable principles and methods' and 'applied the principles and methods reliably to the facts of the case.'" Fed. R. Evid. 702; United States v. Hopkins, 310 F.3d 145, 150-51 (4th Cir. 2002). Experts may opine on an ultimate issue to be decided by a trier of fact. Fed. R. Evid. 702. "A trial judge's decision on whether to admit testimony of this nature is given the broadest degree of latitude." Hopkins, 310 F.3d at 151.

On August 24, 2020, the United States noticed the following experts:

1. Jose Varela, Regional Manager, CVS Health, Organized Retail Crime Team.

2. Herb Shelton, Organized Retail Crime Investigator, Kroger.

3. Nicholas Niehaus, Market Investigator, Target Corporation.

ECF 48. Although the testimony could be considered lay testimony, the August 24, 2020, disclosure provided specific notice to Defendant that the witnesses could be qualified as experts and were expected to opine that "Defendant's eBay operation has the characteristics of a fencing operation rather than a legitimate business." Id. at 2-3.

An investigative report entitled "Operation Just North of Greece" authored by Nick Niehaus and Jose Varela was disclosed to Defendant before his preliminary hearing in this case on February 13, 2020. The United States also produced an investigative report by Nick Niehaus in its initial discovery production on March 30, 2020. ECF 34. These reports detail investigative findings and opine that Defendant was operating a fencing scheme. Witness credentials have been produced to Defendant in subsequent disclosures. The United States has complied with the requirements of Federal Rule of Criminal Procedure 16(a)(1)(G). Additional reports will be provided in a supplemental disclosure as they are received.

Defendant has sought an order prohibiting the United States from referring to co-conspirators as "boosters" and Defendant's operations as a "fence." ECF 80. The United States has filed its response in opposition to that motion in a separate filing. Additionally, the use of these terms is common in these witnesses' area of expertise and will be necessary for these witnesses to fully explain their opinions.

### O.    **Non-Expert Lay Witness Testimony Concerning Content**

The United States expects to call witness Stephen Rowley to testify about factual information contained within eBay, Paypal, and bank records. This factual information will not extend beyond what a common user of eBay, Paypal, and bank records would know,

and thus is not expert testimony. Federal Rule of Evidence 701 provides for the admission of lay opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge [for which an expert would be required]." Fed. R. Evid. 701. The first requirement is satisfied when the witness has first-hand knowledge of the matter about which he is testifying. See United States v. Rea, 958 F.2d 1206, 1215 (2d Cir. 1992). The second requirement prohibits testimony on "meaningless assertions which amount to little more than choosing up sides." Fed. R. Evid. 701, Advisory Committee Note (1972). As to the third requirement, a witness may provide lay opinion testimony about a subject matter as long as the testimony does not require specialized or technical knowledge. See Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 81 (3d Cir. 2009).

"Lay and expert testimony are distinguishable in that 'lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.'" United States v. Thompson, 393 F. App'x 852, 858 (3d Cir. 2010) (quoting Fed. R. Evid. 701 Advisory Committee's Notes (2000)). The reasoning required to arrive at these opinions is not reasoning

19

learned through specialized training or mastery in a field. It is common, everyday reasoning that anyone could apply to their work experiences. Their explanations and interpretations are those that "an untrained layman could . . . make if perceiving the same acts or events." United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001). "Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own personal experiences." United States v. Hill, 643 F.3d 807, 841 (11th Cir. 2011).

On June 25, 2021, the United States disclosed law enforcement officer Jeremy M. Thompson as an expert as a precautionary measure. ECF 77. Officer Thompson is expected to base his testimony on his training, experience, and the evidence previously disclosed in this case. Officer Thompson will testify generally about his experience with electronic device analysis. The witness will testify as to the collection and analysis of data contained on the electronic devices seized from Defendant in this case, including the computer software used in this process and his post-analysis summary of the data.

The United States takes the position that the evidence is lay testimony under Rule 701, rather than expert testimony, because it is based on his personal observations and experience as a law enforcement officer. Furthermore, the witness is testifying as to

information found on the devices and not providing an opinion. Nevertheless, notice was given to Defendant as a precautionary measure in the event that Officer Thompson needs to be qualified as an expert, and witness credentials, as well as a report, were provided to Defendant.

### P. **Summary Charts are an Accepted Form of Proof**

Federal Rule of Evidence 1006 provides in pertinent part that the proponent may use a summary chart to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The use of "summary charts" is approved, and encouraged, especially when there are numerous documents or other items being summarized. See, e.g., United States v. Loayza, 107 F.3d 257, 264 (4th Cir. 1997). In contrast to traditional demonstrative evidence, such charts and summaries are themselves the evidence. See, e.g., United States v. Nivica, 887 F.2d 1120, 1125-26 (1st Cir. 1989) (summaries of banking activities); United States v. Massachusetts Maritime Acad., 762 F.2d 142, 157 (1st Cir. 1985) (summaries of the academy's applicant files). After admission under Rule 1006, the charts and summaries may be used by the jury during deliberations like any other piece of evidence. United States v. Koskerides, 877 F.2d 1129, 1134 (2d Cir. 1989).

On June 25, 2021, the United States has provided notice to

Defendant of its intention to introduce a summary chart under Fed. R. Evid. 1006 to summarize the content of Defendant's eBay records. ECF 78. The proposed summary charts will assist the trier of fact in understanding what is contained in Defendant's eBay records. The eBay records consist a spreadsheet that includes 3833 rows of information — one row for every eBay transaction by "nedined" between 2018 and 2020 — when only some of the rows are relevant. The columns in the eBay records further contain data that is not relevant, would be confusing or difficult for the jury to understand, contain small print, and cannot be conveniently examined in court. The proposed charts simply lay out what is contained within the eBay records. The proposed summary charts and the data, consisting of subsets of Defendant's eBay records, have been produced in discovery.

A chart or summary admitted under Rule 1006 must be based on admissible evidence, but the underlying documents or items need not be actually admitted. <u>United States v. Strissel</u>, 920 F.2d 1162, 1164 (4th Cir. 1990). Accordingly, the United States will seek to introduce the charts as substantive evidence under Rule 1006. The United States also intends to introduce into evidence certain text messages as extracted from Defendant's cell phone, but this does not undermine the fact that the summary chart may also be admitted as evidence in order to convey the same evidence in a more

convenient format. <u>See, e.g.</u>, <u>United States v. White</u>, 737 F.3d
1121, 1134-35 (7th Cir. 2013) (finding the district court properly
admitted a summary chart into evidence despite the fact that the
underlying records were also introduced into evidence due to the
chart being an accurate, unbiased summary of the underlying
documents).

Q.    **Recordings and Rule of Completeness**

The United States intends to introduce a redacted version of
Defendant's post-arrest statement. The recording contains numerous
statements that are irrelevant to the issues at trial and/or are
self-serving statements made by Defendant. To that end, the United
States only intends to introduce the portions of the recordings
which are relevant.

The "rule of completeness" in Rule 106 of the Federal Rules
of Evidence does not require the United States to introduce the
entire post-arrest statement. Rule 106 provides that when a writing
or recorded statement or part thereof is introduced by a party, an
adverse party may require the introduction at that time of any
other part or any other writing or recorded statement which ought
in fairness to be considered at the same time.  Fed. R. Evid. 106.
The purpose of this rule is to "prevent a party from misleading
the jury by allowing into the record relevant portions of the
excluded testimony, which clarify or explain the part already

received.'" United States v. Bollin, 264 F.3d 391, 414 (4th Cir. 2001)(quoting United States v. Wilkerson, 84 F.3d 692, 696 (4th Cir. 1996)).

Rule 106 does not "'render admissible the evidence which is otherwise inadmissible under the hearsay rules.'" United States v. Lentz, 524 F.3d 501, 526 (4th Cir. 2008)(quoting Wilkerson, 84 F.3d at 696). Rule 106 also does not "require the admission of 'self-serving, exculpatory statements made by a party which are being sought for admission by that same party.'" Id. at 526 (quoting Wilkerson, 84 F.3d at 696).

In the instant case, some portions of the post-arrest statement that have been redacted are either inadmissible self-serving hearsay or are irrelevant to the charges contained in the Superseding Indictment. The redacted portions of the statement are unnecessary under Rule 106 to explain the portions of the statement the United States intends to introduce at trial.[10]

### R.    Transcripts

The United States intends to publish to the jury transcripts of the portions of audio and video recordings containing Defendant's statements. On June 25, 2021, proposed transcripts were produced in discovery to Defendant. ECF 77.

---

[10] The United States would object to the entire recording being played as outside the rule of completeness.

24

Transcripts of recorded conversations will assist the jury in following the conversation and identifying the speakers. The transcripts will not replace witness testimony, nor will it relieve the jury's duty to rely upon its own hearing of the recordings. See United States v. Landers, 995 F.2d 1064 (4th Cir. 1993) (transcripts of taped conversations admissible); United States v. West, 574 F.2d 1131, 1138 (4th Cir. 1978). The United States will propose a jury instruction cautioning the jury to that end. See United States v. Brandon, 363 F.3d 341, 345 (4th Cir. 2004) (holding that court's repeated cautionary instructions "ensured that the jury did not mistake the transcripts, rather than the tapes, as the critical pieces of evidence"); United States v. Pratt, 351 F.3d 131, 140 (4th Cir. 2003) (same).

### S.   **Prior Consistent Statements**

At trial, the United States anticipates that it may seek to rehabilitate its witnesses through introduction of their prior consistent statements. Under Federal Rule of Evidence 801(d)(1)(B), such statements are admissible to rebut an allegation, express or implied, that the witness fabricated his or her testimony at trial.

To introduce prior consistent statements at trial, the proponent must establish:

> (1) [w]here the statement was made, (2) [w]hen

25

> the statement was made, (3) [w]ho was present,
> (4) [t]he tenor of the statement . . . [and
> that] (5)[t]he statement preceded (a) the prior
> inconsistent statement or (b) any motive on the
> part of the witness to fabricate.

Edward J. Imwinkelried, *Evidentiary Foundations*, § 5.13[2]
(Michies 8th ed. 2012).

Therefore, should Defendant attempt to impeach any witnesses
on the ground that their statements are recently fabricated or
came only after they had a motive to fabricate, the prosecution
may elicit testimony of their prior consistent statements. The
statements may then be admitted as substantive evidence in the
prosecution's case-in-chief. Fed. R. Evid. 801(d)(1)(B). See also
Tome v. United States, 513 U.S. 150, 156 (1994)(holding that the
common law rule is implicit in Rule 801(d)(1)(B)).

### T.    Defendant's Mental State

Defendant may present character witnesses or other witnesses
to establish a defense that he did not the items he received from
"boosters" were stolen. The Court should preclude any defense
witness, other than Defendant himself, from testifying about the
mental state of Defendant or other witnesses. For example, no
witness should be allowed to offer testimony concerning another
witness's knowledge of a material fact.

Any such testimony would have to be based on personal knowledge pursuant to Rule 602 and helpful pursuant to Rule 701. As the Court of Appeals for the Third Circuit has explained,

> While we have never held that lay opinion evidence concerning the knowledge of a third party is *per se* inadmissible, we have certainly made this kind of evidence difficult to admit. If the witness fails to describe the opinion's basis, in the form of descriptions of specific incidents, the opinion testimony will be rejected on the ground that it is not based on the witness's perceptions . . . To the extent the witness describes the basis of his or her opinion, that testimony will be rejected on the ground that it is not helpful because the fact finder is able to reach his or her own conclusion, making the opinion testimony irrelevant.

United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003); see United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)("When the issue is a party's knowledge, which is perhaps a more easily fathomed state of mind than, for example, intent or motivation, we suspect that in most instances a proffered lay opinion will not meet the requirements of Rule 701.").

Put differently, witnesses who are not mind-readers cannot have personal knowledge of Defendant's mental state. To the extent that some fact observed by the witness may be relevant to the defendant's mental state, the witness may testify directly as to that fact and allow "the fact finder . . . to reach his or her own conclusion." See Polishan, 336 F. 3d at 242. Any deduced

opinion by the witness as to Defendant's mental state is irrelevant pursuant to Rule 701.  Thus, Defendant should be the only witness permitted to testify about his mental state.

## U.   Stipulations

The United States anticipates that the parties may enter into several stipulations prior to trial.[11]  These proposed stipulations include: a stipulation as to Cross Lanes, West Virginia being in this District; a stipulation as to ownership of Defendant's eBay and Paypal account; an agreement that certain business records fall under a hearsay exception set forth in Fed. R. Evid. 803 and are self-authenticating under Fed. R. Evid. 902; an agreement that eBay prohibits the sale of stolen items; and an agreement that eBay transactions involve interstate activity.

## V.   Sympathy and Jury Nullification

The United States anticipates that Defendant may testify at trial. Should Defendant testify, the Court should not permit him to introduce subject matter intended to elicit juror sympathy or suggest nullification. Such topics that have been rejected in other courts include religiosity, Virgin Islands v. Petersen, 553 F.2d

---

[11] The United States submitted two stipulations to defense counsel for consideration on May 27, 2021, and proposed three additional stipulations to defense counsel on July 2, 2021. As of this date, Defendant has not responded to these proposed stipulations.

324, 329 (3d Cir. 1977), impact on Defendant's family, <u>see, e.g.,</u> <u>United States v. Ramirez</u>, 482 F.2d 807, 816 (2d Cir. 1973), and the potential penalties that Defendant faces, <u>Rogers v. United</u> <u>States</u>, 422 U.S. 35, 40 (1975).

## **CONCLUSION**

WHEREFORE, the United States respectfully requests that the Court accept and consider this Trial Brief in ruling on the various evidentiary issues which may arise at the trial of this matter on July 19, 2021. The United States expects that the presentation of its case will take two to three days.

Respectfully submitted,

LISA G. JOHNSTON
Acting United States Attorney

s/Andrew J. Tessman
ANDREW J. TESSMAN
Assistant United States Attorney
WV State Bar No. 13734
300 Virginia Street, East, Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
E-mail: andrew.tessman@usdoj.gov

s/Erik S. Goes
ERIK S. GOES
Assistant United States Attorney
WV Bar No. 6893
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: erik.goes@usdoj.gov

It is hereby certified that the foregoing "TRIAL BRIEF" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 6th day of July, 2021 to:

> Timothy J. LaFon
> CICCARELLO DELGIUDICE & LAFON
> Suite 100
> 1219 Virginia Street East
> Charleston, WV 25301-2912


> s/Andrew J. Tessman