IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        CRIMINAL ACTION NO. 2:20-cr-00054

NEDELTCHO VLADIMIROV,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The parties appeared before the Court on July 20, 2021, for trial in this matter. At the close of the United States' case, the Defendant made an oral motion for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure as to Counts One, Two, Three and Four of the superseding indictment and renewed the same at the close of the Defendant's case. Pursuant to Rule 29(a), the Court must enter a judgment of acquittal for any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). The district court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Millender*, 970 F.3d 523, 528 (4th Cir. 2020) (*quoting Jackson v. Virginia*, 443 U.S. 307 (1979)). That "standard leaves very little discretion on the part of the trial court." *United States v. Houdersheldt*, Crim. No. 3:19-00239, 2020 WL 7646808, at *5 (S.D. W.

Va. Dec. 23, 2020) (Chambers, J.). The Court reviews the evidence and testimony presented as of the close of the United States' case when the motion pursuant to Rule 29(a) was made.

A. *Money Laundering Conspiracy*

In Count One of the superseding indictment, the Defendant was charged with Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h). The statute provides in pertinent part that:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity [shall be guilty of a crime against the United States].

18 U.S.C. § 1956(a)(1)(A)(i). Furthermore, "Any person who conspires to commit any offense defined in this section [Section 1956] or Section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C. § 1956(h).

To satisfy its burden of proof for this offense, the United States must establish each of the following elements beyond a reasonable doubt:

> (1) That two or more persons conspired to conduct or attempt to conduct a financial transaction having at least a minimal effect on interstate commerce or involving the use of a financial institution which is engaged in, or the activities of which have at least a minimal effect on, interstate or foreign commerce;
>
> (2) That the property that was the subject of the monetary transaction involved the proceeds of specified unlawful activity;
>
> (3) That at some time during the existence or life of the conspiracy, agreement, or understanding, the defendant knew the property

    involved represented the proceeds of some form of unlawful activity;

(4) That the defendant engaged in the financial transaction with the intent to promote the carrying on of specified unlawful activity; and

(5) That the defendant knowingly and voluntarily joined the conspiracy.

    The Defendant argues that the evidence and testimony presented at trial does not establish that there was a conspiracy to money launder because there is no evidence that the alleged co-conspirators entered into an agreement or scheme with the Defendant. In particular, the Defendant argues that after the alleged boosters or co-conspirators sold the items to the Defendant, there was no evidence demonstrating that they were aware of the Defendant's transactions beyond that point. Therefore, the Defendant could not have been engaged in a scheme with the alleged co-conspirators. The Defendant also argues that there was not sufficient evidence presented to establish that he knew the monetary transaction involved the proceeds of unlawful activity, or that the property involved represented the proceeds of unlawful activity.

    The United States called several alleged boosters, or professional shoplifters, as witnesses in this case, who testified about their transactions with the Defendant. Each alleged booster testified that they would steal merchandise from retail stores and take those items to the Defendant who would purchase the items for approximately thirty percent of their resale value on eBay. The boosters would frequently steal multiples of the same item which were brand new and still in the original packaging when sold to the Defendant. One booster testified that he developed a device to remove security packaging or wires from stolen items, that he showed the Defendant how that device worked and gave a similar device to the Defendant. That same booster testified that the Defendant stated he had wire snippers to remove security devices from boxes. The boosters

would receive cash for the stolen items and use that cash to purchase drugs. Typically, the transactions would occur in the Speedway and United States Post Office parking lots in Cross Lanes. The individual boosters testified how often they personally sold items to the Defendant. The minimum number of times items were sold by a single booster was forty and the maximum was one hundred.

The United States also presented testimony and evidence establishing that the Defendant would sell the items on eBay, and the boosters were all aware that the Defendant resold the items. The proceeds from those sales would be deposited into the Defendant's PayPal account, which he would then deposit into his checking account at City National Bank. The Defendant made approximately 7,000 sales on eBay from 2016 to 2020, totaling approximately $549,000 in proceeds.

The United States called several organized retail crime specialists as expert and fact witnesses. Those witnesses testified that they were present during the execution of the search warrant at the Defendant's residence and noticed several factors that were consistent with a fencing operation, or an operation wherein a booster steals items and sells them to a fence who re-sells the stolen property. Specifically, these witnesses observed that the volume of items present at the Defendant's home, the array of items, and the fact that the merchandise was brand new in original packaging were all indicative of a fencing operation. They testified that the Defendant's home had a room filled with merchandise, shipping boxes, and a cleaning station. According to these witnesses, a cleaning station is used to remove labels and security devices from stolen property. Moreover, they testified that the price for which the Defendant was selling the items on eBay was lower than the wholesale price for which the retail store could purchase the items. This type of

pricing is consistent with a fencing operation, according to those witnesses experienced in investigating such operations.

According to the boosters, the Defendant would always pay them approximately thirty to forty percent of the eBay resale value of the item, using the eBay application on his phone to determine the price. This testimony was consistent between all of the boosters and the Defendant. The Defendant would resell the items on eBay for approximately fifty to eighty percent of the retail value. Furthermore, the boosters knew that the Defendant used money from an account at City National Bank to purchase the items. The boosters testified that frequently the Defendant would plan to meet with them at City National Bank so that he could withdraw cash from the ATM to pay them. As noted previously, the boosters were also aware that the Defendant later sold the property on eBay. It could reasonably be inferred from the evidence presented that the Defendant used money obtained by selling the stolen goods on eBay to purchase additional stolen goods from the boosters, and that the boosters understood that their stolen goods were purchased, at least in part, with the proceeds derived from the previous sale of stolen goods.

This arrangement is consistent with the type of implicit scheme that may constitute a conspiracy. It is not necessary that the boosters knew what the Defendant did with the items beyond the initial transaction of purchasing the stolen goods using money from a financial institution, and it is not necessary that the Defendant knew all of the details involved in the boosters' procurement of the goods. "Because it is the agreement to commit the crime that creates the conspiracy, the defendant need not know the details of the underlying crime or 'the entire breadth of the criminal enterprise.'" *United States v. Moussaoui*, 591 F.3d 263, 298-97 (4th Cir. 2010) (*quoting United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996)). "A conspirator need

not have had actual knowledge of the co-conspirators or the details of the conspiracy" and "a conspiracy conviction must be upheld even if the defendant played only a minor role in the conspiracy." *United States v. Morsley*, 64 F.3d 907, 919 (4th Cir. 1995).

The United States presented direct and circumstantial evidence of the existence of a fencing operation. Specifically, the evidence included the Defendant's knowledge that he was purchasing stolen items, his withdrawal of cash from a bank to purchase the items, his subsequent re-sell of the stolen items and his deposit of the proceeds into a federally insured bank. The boosters and the Defendant fence played defined roles within the overall scheme. Viewing the direct and circumstantial evidence presented by the United States in the light most favorable to the United States, the Court finds that a rational jury could, in fact, under proper instructions from the Court, find the existence of a money laundering conspiracy beyond a reasonable doubt. Therefore, the Court finds that the motion for judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure should be denied as to Count One.

B. *Money Laundering*

In Counts Two, Three, and Four of the superseding indictment, the Defendant was charged with Money Laundering, in violation of 18 U.S.C. § 1957(a). That statute provides in pertinent part that:

> (a) Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity . . . [shall be guilty of a crime against the United States].

*Id.* To satisfy its burden of proof for the offense charged in Counts Two through Four of the superseding indictment, the United States must establish each of the following elements beyond a reasonable doubt:

> (1) On or about the dates charged in superseding indictment, the defendant engaged or attempted to engage in a monetary transaction in or affecting interstate or foreign commerce;
>
> (2) The monetary transaction involved criminally derived property of a value greater than $10,000;
>
> (3) The property was derived from specified unlawful activity;
>
> (4) The defendant acted with knowledge that the transaction involved the proceeds of a criminal offense; and
>
> (5) The transaction took place in the United States.

In moving the Court for a judgment of acquittal for the money laundering counts, the Defendant argues that there was no evidence that the funds transferred were illegal, that the funds constituted illegal proceeds, or that the Defendant had any knowledge that the funds were derived from illegal or stolen property. The Defendant did not dispute that he engaged in monetary transactions in the United States that affected interstate or foreign commerce, and which amounted to more than $10,000. Therefore, the Court's inquiry focuses on whether the United States presented sufficient evidence for a jury to make a finding that the monetary transactions involved criminally derived property.

As stated above, viewing the evidence in the light most favorable to the United States, it presented testimony and evidence establishing the existence of a fencing operation, wherein the Defendant purchased stolen property obtained from boosters. The Defendant then sold that stolen property on eBay, and the proceeds from those sales were deposited into the Defendant's Paypal

and City National Bank accounts. Thus, the United States established that illegal property or criminal activity served as the source of funds in the Defendant's bank account.

Through the testimony of bank, eBay and Paypal records custodians and its investigator, the United States presented testimony and evidence detailing the Defendant's transactions at City National Bank and J.P Morgan Chase Bank, his eBay sales and the timing of the transactions. Specifically, the United States established that the Defendant regularly made ATM withdrawals of $700 per day, and that proceeds from the Defendant's "nedined" eBay account were deposited into the Defendant's PayPal account. Those PayPal deposits were then transferred to the Defendant's City National Bank account, and the PayPal deposits constituted the majority or the entirety of the balance within the Defendant's bank account.

The United States presented additional evidence of a cancelled check in the amount of $155,000, transferring money from the Defendant's City National Bank account to a J.P. Morgan Chase bank account in the Defendant's name, which was earmarked for real estate in the memo line of the check. Lastly, the Defendant's bank records from J.P. Morgan Chase Bank revealed a transaction of approximately $155,000 from J.P. Morgan Chase Bank to a bank in Bulgaria. Viewing all of this evidence in the light most favorable to the United States, there was evidence of at least three separate bank transactions on July 8 and July 23, 2019, from which a reasonable trier of fact could find beyond a reasonable doubt that the Defendant committed the offense of money laundering as alleged in Counts Two, Three and Four.

Therefore, the Court finds that the Defendant's motion made pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure should be denied as to Counts Two, Three, and Four.

**CONCLUSION**

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the Defendant's oral motion for judgment of acquittal as to Counts One, Two, Three, and Four be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: July 23, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA