IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 2:20-cr-00054

NEDELTCHO VLADIMIROV

### RESPONSE OF THE UNITED STATES TO MOTION FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

Comes now the United States of America, by Andrew J. Tessman and Erik Goes, Assistant United States Attorneys for the Southern District of West Virginia, and responds to Defendant Nedeltcho Vladimirov's Motion for a Judgment of Acquittal and Motion for a New Trial and Memorandum in Support. ECF Nos. 148, 148-1. Defendant's Motion should be denied.

### I.   BACKGROUND

On July 21, 2021, following a three-day trial, a federal jury convicted Defendant Nedeltcho Vladimirov of one count of conspiracy to commit money laundering under 18 U.S.C. § 1956(h) (Count 1) and three counts of money laundering under 18 U.S.C. § 1957 (Counts 2-4). The Indictment alleged and the evidence at trial showed that Vladimirov and his co-conspirators operated a criminal theft ring called a "fencing scheme" in the Southern District of West Virginia from around December 2016 until February 2020. *See* ECF No. 58. A fencing scheme is a form of organized crime with three essential parts: 1) the "boost" or the theft; 2) the "fence" or the middleman who quickly resells the stolen item; and 3) an unsuspecting buyer of a stolen item.

In this case, Vladimirov was the "fence" and the driving force behind the scheme. He was the only individual in the scheme who made substantial profits selling the stolen merchandise to

1

unsuspecting buyers. To execute the scheme, Vladimirov conspired with "boosters," who were the individuals who stole (or boosted) brand new items that would sell easily on eBay from local retail stores. Once an item was stolen, the booster immediately met with Vladimirov, who purchased the brand-new item with cash at a small fraction of the retail value. The stolen merchandise was sold in a gas station parking lot. Vladimirov then listed the stolen item on eBay at a much higher price (but significantly below the retail price) to move the stolen property quickly.

At trial, four of the booster co-conspirators testified to the details of their relationship with Vladimirov: (1) Nicholas Martin; (2) Steven Anderson; (3) Cassidi Wentz; and (4) Robert Hatfield. Each booster testified that they met with Vladimirov repeatedly during the course of the conspiracy to sell Vladimirov hundreds of stolen items. Each booster testified that, after stealing merchandise, they immediately called Vladimirov, who agreed to meet with the boosters within minutes to purchase the items. Vladimirov always met with the boosters in his black BMW sedan at discrete locations near his residence in Cross Lanes, West Virginia. Inside the car, Vladimirov looked up the value of the items on an eBay application on his mobile phone and paid about 30% of the eBay value in cash. The boosters were addicted to opioids and received just enough cash from Vladimirov to feed their addictions.

In addition to two U.S. Secret Service Special Agents, three retail investigators testified as to their involvement in the criminal investigation into the fencing scheme. Organized Retail Crime Investigators Jose Varela (CVS), Herb Shelton (Kroger), and Nick Niehaus (Target) testified as to their personal observations during the investigation. Two retail investigators, Varela and Niehaus, were qualified as experts and provided expert opinions that Vladimirov's eBay operation had the characteristics of a fencing operation rather than a legitimate business.

The United States introduced Vladimirov's eBay, Paypal, and bank records. These records showed that Vladimirov was running a high-volume eBay operation where Vladimirov received over $550,000 in eBay sales over the course of the conspiracy (late 2016-February 2020). The eBay records showed that Vladimirov repeatedly sold the very same items that the boosters were providing him. The eBay sales proceeds were deposited into Vladimirov's Paypal account. During the same timeframe, Vladimirov continually transferred money from Paypal to his local checking account with City National Bank and made continual cash withdrawals from the same account to engage in additional financial transactions to purchase additional stolen items.

The business records also showed that, from late 2016 to July of 2019, Vladimirov did not have any other sources of income aside from the eBay operation. During this time, Vladimirov made continual transfers from his City National Bank checking account to his savings account at the same bank. In July of 2019, Vladimirov engaged in a series of monetary transactions in an amount greater than $10,000 wherein $153,000 was transferred to a bank in Bulgaria.

Vladimirov testified at trial and admitted to buying items from Martin, Anderson, Wentz, and Hatfield on multiple occasions. Vladimirov admitted that he met with the boosters as described by the boosters, purchased the items at a low price, sold those items on eBay at a higher price, shipped the items to buyers across the United States, transferred the eBay sales proceeds to his City National Bank checking account, and continually withdrew cash to engage in additional financial transactions.

The federal jury returned a verdict of guilty on all four money laundering counts.

## II. STANDARD OF REVIEW

This Court should deny a motion for judgment of acquittal if "viewing the evidence in the light most favorable to the government, *any* rational trier of facts could have found the defendant

guilty beyond a reasonable doubt." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982) (emphasis added); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). "A defendant challenging the sufficiency of the evidence faces a heavy burden." *United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007). "[A] judgment of acquittal" is warranted "only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (quotation marks omitted). This Court "must . . . allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Cameron,* 573 F.3d 179, 183 (4th Cir. 2009) (citations omitted).

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When the motion is based on the weight of the evidence at trial, the Court "should exercise its discretion to grant a new trial '*sparingly*,'" and "only when the *evidence weighs so heavily against the verdict*" that it would be *unjust* to enter judgment. *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (emphasis added) (quoting *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997)); *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985); *see United States v. Singh*, 518 F.3d 236 (4th Cir. 2008) (reversing a district court that granted a new trial under Rule 33 for abuse of discretion where the evidence at trial did not weigh heavily against the verdict); *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) (reiterating that to grant a Rule 33 motion "[t]here must be a real concern that an innocent person may have been convicted").

### III. DISCUSSION

A. The convictions were supported by the evidence.

Defendant Vladimirov has filed a motion (ECF No. 148) under Federal Rules of Criminal Procedure 29 and 33 arguing that the evidence presented at trial was insufficient. The motion should be denied because the evidence presented by the United States at trial was substantial and proved Vladimirov guilty beyond a reasonable doubt as to all four Counts of the Superseding Indictment.

1. **There was sufficient evidence to show that Defendant Vladimirov knew the items he was receiving from the boosters were stolen.**

The overriding defense at trial and in Vladimirov's pending motion is that the United States did not present sufficient evidence to prove that Vladimirov knew the items he received from the boosters were stolen. Vladmirov's knowledge that the items were stolen was proven through the testimony and documentary evidence presented at trial. This issue of fact that was thoroughly litigated at trial, and the jury decided the issue in favor of the United States.

First, the evidence concerning the circumstances of Vladimirov's purchases of stolen items from the boosters was sufficient for the jury to find that Vladimirov knew the items were stolen. The boosters all testified that they met with Vladimirov repeatedly in 2016-2020 in Cross Lanes, West Virginia in Vladimirov's black BMW at one of three locations: (1) the Speedway gas station parking lot; (2) the City National Bank parking lot; or (3) the Post Office parking lot. Further, they all testified that they: (1) called Vladimirov immediately after a theft to arrange the sale of the stolen items; (2) typically met with Vladimirov within minutes of the theft; (3) received only a small fraction of the value of the brand new in-the-box item; (4) repeatedly provided the same brand-new items to Vladimirov; (5) only received payments in cash from Vladimirov; (6) were

addicted to heroin; (7) were experiencing noticeable opioid withdrawal symptoms during the sales meetings; and (8) used the cash from Vladimirov to support their addictions.

Second, the sheer volume and repeated nature of the sales meetings sufficiently demonstrates Vladimirov's knowledge that the items were stolen. Nicholas Martin testified that he sold stolen items to Vladimirov 60-80 times. (Trial transcript, July 19, 2021 at 121). Robert Hatfield testified that he met with Vladimirov a couple times a week from 2016 to late 2017 to sell him stolen items. *Id*. at 143, 151. Steven Anderson testified that he sold stolen items to Vladimirov 100 times. *Id*. at 169. Cassidi Wentz testified that she met with Vladimirov at least 40 times to sell him stolen items. *Id*. at 212.

Third, the jury could infer Vladimirov's knowledge that the items were stolen from the testimony that the boosters sold stolen items to Vladimirov with security devices and labels on the items. Nicholas Martin testified that he brought items that were damaged from removing the security devices, and Vladimirov only expressed disappointment the item was damaged rather inquiring as to why it was damaged. *Id*. at 121-22. Steven Anderson testified that he showed Vladimirov tools to remove security devices, sold items to Vladimirov with the security devices on them, removed security devices in front of Vladimirov, and that Vladimirov indicated he also had tools to remove security devices. *Id*. at 181-83, 185-86. The jury also heard testimony that a "cleaning station" to remove labels from boxes was located in Vladimirov's home. (Trial transcript, July 20, 2021, at 78-80, 84, 86, 97, 110, 112, 121-22, 189-90, 194, 196, 199); s*ee also* Gov. Exhibit 7.

Finally, Vladimirov's knowledge that the items were stolen was proven by expert testimony that was operating a fencing scheme rather than a legitimate eBay business. As more fully set out *below*, the jury heard expert testimony from Organized Retail Crime investigators

6

Jose Varela and Nick Niehaus, who opined that Vladimirov's eBay operation was consistent with a fencing operation.

### 2. There was sufficient evidence to sustain the jury verdict as to Count 1.

Defendant Vladimirov was charged in Count 1 with conspiracy to commit promotional money laundering under 18 U.S.C. § 1956(h). The elements are:

> (1) a conspiracy, agreement, or understanding to commit money laundering was formed or entered into by two or more persons at or about the time alleged;
>
> (2) at some time during the existence or life of the conspiracy, agreement, or understanding, the defendant knew that the property involved represented the proceeds of some form of specified unlawful activity; and
>
> (3) the defendant knowingly and voluntarily joined the conspiracy, agreement, or understanding.

*See United States v. Alerre*, 430 F.3d 681, 693-94 (4th Cir. 2005). *See also United States v. Singh*, 518 F.3d 236, 248 (4th Cir. 2008). The elements of the object of the conspiracy, promotional money laundering (18 U.S.C. § 1956(a)(1)(A)(i)), are that:

> (1) the defendant conducted or attempted to conduct a financial transaction having at least a minimal effect on interstate commerce or involving the use of a financial institution which is engaged in, or the activities of which have at least a minimal effect on, interstate or foreign commerce;
>
> (2) the property that was the subject of the transaction involved the proceeds of specified unlawful activity;
>
> (3) the defendant knew that the property involved represented the proceeds of some form of unlawful activity; and
>
> (4) the defendant engaged in the financial transaction with the intent to promote the carrying on of specified unlawful activity.

*United States v. Wilkinson*, 137 F.3d 214, 220 (4th Cir. 1998).

At trial, the evidence showed that Vladimirov routinely transferred the eBay sale proceeds of the fencing scheme from his PayPal account into an FDIC-insured bank account (City National

7

Bank checking x8889). After receipt of the proceeds of the scheme, Vladimirov routinely withdrew cash from the checking account and used it to conduct repeated financial transactions with the same booster co-conspirators to promote the scheme.

Vladimirov's argument concerning the insufficiency of the evidence as to Count 1 appears to be two-fold. First, he argues that he did not have knowledge that the items were stolen so he could not have known that he was engaging in financial transactions with the proceeds of specified unlawful activity.[1] Vladimirov's knowledge that the items were stolen is addressed in Part III.A.1, *above*. Second, Vladimirov argues that the boosters had insufficient knowledge of what he was doing with the stolen items to establish a conspiracy to commit money laundering between himself and any of the boosters.

With respect to the second argument, Vladimirov seems to focus on the subsequent eBay and Paypal financial transactions involving the stolen items. While those financial transactions did in fact promote the scheme by generating criminal proceeds and those financial transactions were foreseeable to the boosters because they knew Vladimirov resold the items on eBay, the conspiracy to engage in promotional money laundering also includes the agreement between Vladimirov and any of the boosters to engage in repeated financial transactions involving the sale of stolen items. Due to the repeated nature of the relationship between Vladimirov and any of the boosters, each co-conspirator has knowledge that the cash used to purchase the stolen items was derived from the proceeds of specified unlawful activity, because it was known that Vladimirov is essentially in the business of generating those proceeds. When an agreement is formed to purchase additional stolen items (i.e. the sales meeting is arranged after a theft), the parties agree to conduct financial

---

[1] Although Vladimirov denies knowledge that the items were stolen, it's not disputed that the sale of stolen merchandise on eBay would constitute the proceeds of some unlawful activity (i.e. mail and/or wire fraud).

8

transactions to promote the scheme. In this case, the jury heard evidence that Vladimirov agreed to receive additional stolen items with intent to promote the scheme by generating proceeds through subsequent resale of the stolen items, and the boosters received cash as payment and reward for their participation.[2] *See United States v. Alerre*, 430 F.3d 681, 695 (4th Cir. 2005) (all defendants who joined the conspiracy may be found guilty of a § 1956(h) conspiracy to conduct financial transactions even if the agreement was that only one of them would commit the substantive offense); *United States v. Bolden*, 325 F.3d 471, 489 (4th Cir. 2003) (The promotion element is satisfied when a defendant pays another person for being involved in an unlawful scheme, because such payments compensate the person for his illegal activities and encourage continued participation).

By Vladimirov's own admission at trial, he engaged in repeated financial transactions with each booster and paid them with the proceeds of the eBay resales. Each booster testified that they

---

[2] *See also United States v. Leung*, 787 F. App'x. 925 (9th Cir. 2019) (rejecting defendant's argument that he did not conduct or attempt to conduct a financial transaction himself; conspiracy simply requires agreement between two people to accomplish unlawful act and intent to commit underlying offense, regardless of who carries out the plan); *United States v. Williamson*, 656 F. App'x. 175 (6th Cir. 2016) (evidence demonstrated a systematic pattern where defendant obtained cash from selling drugs which was then delivered to his suppliers in exchange for more drugs for resale); *United States v. Robinson*, 656 F. App'x. 145 (6th Cir. 2016) (co-conspirator's testimony that defendant collected and transported proceeds from the sale of drugs knowing that she would be paid directly from that money and the funds would be used to purchase additional drugs was sufficient to show that defendant was aware of conspiracy and aided in its continuation); *United States v. Johnson*, 297 F.3d 845, 868–70 (9th Cir. 2002) (defendant who knew checks received from fraud victims were cashed and used to pay utility bills—thus funding the operation—guilty of conspiracy to commit promotional money laundering); *United States v. Farrell*, No. 03-311-1(RWR), 2005 WL 1606916, *8 (D.D.C. July 8, 2005) (conspiracy does not require proof of a completed money laundering offense, but only an agreement to commit such an offense; therefore, it is not necessary to prove that the financial transaction involved SUA proceeds, but only that defendant agreed to conduct a transaction involving such proceeds); *United States v. Huber*, No. C3–00–76, 2002 WL 257851, *2 (D.N.D. Jan. 3, 2002) (in contrast to a substantive offense, which may allege only a single financial transaction, a money laundering conspiracy may allege an agreement to conduct a multitude of financial transactions).

continued to steal items and sell them to Vladimirov because he would give them the cash they needed to carry on their drug habits. Whether Vladimirov knew the items were stolen was an issue posed to the jury and resolved in favor of the United States. There was substantial evidence presented at trial to prove Vladimirov guilty beyond a reasonable doubt of the offense charged in Count 1 of the Superseding Indictment.

### 3. There was sufficient evidence to sustain the jury verdict as to Counts 2-4.

Defendant Vladimirov was charged with and the jury returned a guilty verdict on three counts of violating the money laundering spending statute under 18 U.S.C. § 1957(a). The elements of the money laundering spending statute are that: (1) the defendant engaged in a monetary transaction which had some effect on interstate or foreign commerce; (2) the monetary transaction involved criminally derived property with a value greater than $10,000; and (3) the defendant did so knowingly. *See* 18 U.S.C. § 1957(a).

Financial Analyst Stephen Rowley testified as to his examination of the records produced by eBay, Paypal, City National, and JP Morgan Chase Bank in this case and information contained within those records. The business records admitted into evidence at trial established that, in the months leading up to July 2019, more than $10,000 in deposits were made from Paypal into Defendant's City National checking account (x8889). In the same period, more than $10,000 was transferred from Vladimirov's City National checking account (x8889) to his City National savings account (x4623). On July 8, 2019, Vladimirov transferred $155,000 from his City National savings account (x4623) to his City National checking account (x8889). On the same date, Vladimirov wrote a personal check (#1045) for $155,000 from his City National checking account (x8889) and deposited it into his JPMorgan Chase Bank account (x8197). On July 23, 2019,

Vladimirov transferred $153,000 from his JPMorgan Chase Bank account (x8197) to a bank in Bulgaria.

The boosters testified at trial that they were repeatedly selling stolen items to Vladimirov in the months leading up to July 2019 when the monetary transactions charged in Counts 2-4 occurred, and Vladimirov admitted that he resold the items he purchased. As summarized *above*, the transactions occurred regularly and repeatedly and resulted in eBay sales of substantially more than $10,000 prior to July 2019.

Vladmirov argues that there was no "direct proof" concerning the illegal transactions that formed the basis of the charges under 18 U.S.C. § 1957(a) in Counts 2-4. However, the United States is not required to trace the proceeds to a particular illegal transaction. *See United States v. Stewart*, 256 F.3d 231, 249 (4th Cir. 2001). *See also United States v. Shafer*, 608 F.3d 1056, 1067 (8th Cir. 2010) ("The government is not required to trace funds to prove a violation of § 1957;" when drug dealer buys car for cash, conviction may be based on his lack of legitimate income and history of using large quantities of cash in his drug business and to purchase personal items); *United States v. Arden*, No. 98–379, 2009 WL 1971392, *4 (E.D. Pa. July 7, 2009) (government need not trace the laundered funds to the specific acts alleged as substantive counts; given the fungible nature of money, it is sufficient to prove that the funds came from defendant's telemarketing scheme).

Vladimirov also suggests that he engaged in legal sales of items on eBay and that the United States failed to separate the proceeds from the legal and illegal transactions in order to show that the charged transactions contained at least $10,000 of criminal proceeds. But the United States need not prove that all of the money involved in the transaction constitutes the proceeds of the criminal activity; it is sufficient if the United States proves that at least part of the money

represented such proceeds. *See United States v. Wilkinson*, 137 F.3d 214, 222 (4th Cir. 1998) (en banc) ("[W]hen the funds used in a particular transaction originated from a single source of commingled, legally-and illegally-acquired funds, it may be presumed that the transacted funds, at least up to the full amount originally derived from crime, were the proceeds of the criminal activity.").

### B. The Court did not err in allowing expert testimony concerning fencing operations.

Defendant's allegations that the experts testified improperly as "overview" witnesses does not comport with the testimony the jury received at trial.

On August 24, 2020, the United States noticed the following witnesses as potential experts in the field of organized retail fraud, along with CV's and expert reports consistent with discovery obligations pursuant to Fed. R. Crim. P. 16:

1. Jose Varela, Regional Manager, CVS Health, Organized Retail Crime Team.

2. Herb Shelton, Organized Retail Crime Investigator, Kroger.

3. Nicholas Niehaus, Market Investigator, Target Corporation.

ECF No. 48 at 2-3. This expert disclosure was reiterated in the United States Trial Memorandum. ECF No. 94 at 4-5, 16-18. Both the August 24, 2020 notice and the trial memorandum provided specific direction to Defendant that the witnesses could be qualified as experts and were expected to opine that "Defendant's eBay operation has the characteristics of a fencing operation rather than a legitimate business." ECF Nos. 48 at 2-3, 94 at 16-18.

Federal Rule of Evidence 702 permits the admission of expert testimony where "(1) that the expert ha[s] 'specialized knowledge [that] will assist the trier of fact'; (2) that the expert be qualified to testify because of 'knowledge, skill, experience, training or education'; (3) that the witness base his testimony upon 'sufficient facts or data'; and (4) that the witness has used 'reliable

12

principles and methods' and 'applied the principles and methods reliably to the facts of the case.'" Fed. R. Evid. 702; *United States v. Hopkins*, 310 F.3d 145, 150-51 (4th Cir. 2002). Experts may opine on an ultimate issue to be decided by a trier of fact. Fed. R. Evid. 702. "A trial judge's decision on whether to admit testimony of this nature is given the broadest degree of latitude." *Hopkins*, 310 F.3d at 151; *United States v. Wilson*, 484 F.3d 267, 274-75 (4th Cir. 2007) (district court has "broad latitude' in determining whether an expert's methodology is reliable).

At trial, the United States sought to qualify Jose Varela and Nicholas Niehaus as experts in the field of retail fraud.[3] After cross-examination concerning qualifications and methodology, the Court found the United States had met its burden of qualifying Mr. Niehaus and Mr. Valera as experts in the field of organized retail fraud. They did not testify as "overview" witnesses under any scenario.

Mr. Varela and Mr. Niehaus both testified about their extensive personal observations during the retail fraud investigation, and the work they did directly to gather evidence. This work included actual surveillance, personally reviewing Defendant's eBay records concerning pricing, and comparing this pricing to their own knowledge of their stores retail prices. This is not "overview" testimony. Rather, this testimony is relevant evidence based on the expert's observations—what they observed with Defendant's conduct in their observations at the relevant gas station and post office, and also in Defendant's home after law enforcement executed the search warrant. This evidence is simply not "overview" testimony.

Even so, the United States limited expert opinions to testimony that Defendant's operation "was consistent with a fencing operation" and facts that support this conclusion. The United States

---

[3] The United States limited Herb Shelton's testimony to his personal observations to be mindful of redundancy concerns raised by defense counsel.

13

also did not ask the experts hypothetical questions. Defendant, through counsel, even highlighted these tactical limitations in his closing argument to state the experts did not expressly say it was a fencing operation and only said that it was consistent with a fencing operation. These expert conclusions were not "overview" testimony and were properly considered in context.

Further, Mr. Valera and Mr. Niehaus's testimony both were subject to rigorous cross-examination by Defendant's counsel. This examination concerned their credentials, their level of expertise, and methodology prior to their qualification as experts. Defendant also was able to cross examine the witnesses again about what the experts directly observed and the basis of their conclusions. Defendant challenged the expert conclusion that what they observed in Defendant's home was consistent with a fencing operation, other possible conclusions that could be formed, and the bias the experts may have had in working for retailers. This too is not "overview" testimony.

The Court provided specific instructions to the jury when experts also have facts they gathered. This instruction cautioned the jury to closely examine fact witnesses that were also qualified as expert witnesses. This instruction was given after the experts testified. The Court further charged the jury about experts prior to its deliberations, an instruction given without objection by either party. These instructions were correct as a statement of law and gave the jury the proper framework to evaluate the expert testimony in the instant case, especially when expert testimony also involves factual observations. Similar instructions have been approved by the Fourth Circuit to provide context when a witness testifies in a "dual-role." *United States v. Smith*, 919 F.3d 825, 833 n.5 (4th Cir. 2019). The limiting instruction in this case was given without objection by either party and upon specific inquiry by the Court as to its frequency of use. The jury

fairly evaluated the testimony of the experts. Jurors are presumed to follow instructions of the Court, and there is no evidence they failed to do so.

Defendant also claims that the experts relied on statements of other witnesses which denied Defendant the right to cross examine these other witnesses. Defendant's motion, ECF No. 148 at 5. The Fourth Circuit has rejected this exact argument in holding experts use of interviews, statements, and reports, does not violate the Confrontation Clause. *See United States v. Johnson*, 587 F.3d 625, 634 (4th Cir. 2009) (expert use of testimonial interviews with non-testifying informants does not violate the Confrontation Clause); *United States v. Washington*, 498 F.3d 225, 227-32 (4th Cir. 2007) (use of lab reports by experts does not violate the Confrontation Clause); *United States v. Abbas*, 74 F.3d 506, 512-13 (4th Cir. 1996) (Defendant can confront experts through vigorous cross-examination or hiring their own expert). Defendant's baseless claim that the experts use of interview reports violates the Confrontation Clause should be rejected.

### C. The jury was properly instructed on deliberate blindness.

Finally, Defendant Vladimirov argues that the deliberate blindness instruction was inappropriately given. A deliberate blindness instruction is appropriate where there is evidence that a defendant willfully avoided learning facts that would alert him to criminal activity. *See United States v. Vinson*, 852 F.3d 333, 357 (4th Cir. 2017); *United States v. Rockson*, Nos. 95-5116, 95-5098, 1996 WL 733945 (4th Cir. Dec. 24, 1996); *United States v. Campbell*, 977 F.2d 854, 859 (4th Cir. 1992). *See also United States v. Gordon*, 754 F. App'x. 171 (4th Cir. 2018). The boosters detailed the odd circumstances in which they sold stolen items to Vladmirov, which would have raised red flags to the average person. Vladimirov did not ask any questions about where the items he was purchasing were coming from. There was also testimony at trial that criminals tend to have an upspoken agreement not to talk about the details of their criminal activity with one

another. Given these circumstances, the Court did not err in giving a deliberate blindness instruction. *See Gordon*, 754 F. App'x. at *181 (jury could infer defendant willfully avoided learning that funds came from illegal activity by failing to ask questions of person who supplied the funds, or notice obvious red flags raised by the odd nature of transactions).

### D. The arguments advanced in Vladimirov's *pro se* filing are meritless.

Counsel for Defendant Vladimirov states that, "[a]t the direction of the Defendant," he has incorporated "11 points" of a "Motion to Appeal" drafted *pro se* by Vladimirov. ECF Nos. 148 at 8; 148-1. Momentarily putting aside that the filing of the *pro se* motion is procedurally improper,[4] the eleven points raised by Vladimirov *pro se* have already been addressed by the Court prior to the jury trial, are untimely, are perfunctory/vague, or are frivolous. For example, Vladimirov complains about search and seizure issues, but the time for filing a motion to suppress passed before trial. Fed. R. Crim. P. 12(c)(3). Vladmirov also attempts to bring ineffective assistance of counsel claims against his current appointed attorney. Such motions usually require the allegedly ineffective attorney to file an affidavit so the Court cannot possibly address these claims at this stage.

### CONCLUSION

Defendant's guilt was established by substantial documentary and testimonial evidence. The United States proved beyond a reasonable doubt that Vladimirov operated a fencing scheme. The evidence was overwhelming, and to the extent there was any evidence to the contrary, it was considered by the jury and rejected. The record amply supports his convictions, and Vladimirov

---

[4] The Court need not consider *pro se* motions filed by a criminal defendant who is represented by counsel. *See, e.g., United States v. Riggleman*, No. 5:11-0124, 2013 WL 125735, at *1 (S.D.W. Va. Jan. 9, 2013). *See also United States v. Hill*, 592 F. App'x 184, 185 n.2 (4th Cir. 2014).

has not persuasively argued that no rational trier of fact could have found him guilty beyond a reasonable doubt. There has been no miscarriage of justice, an innocent person has not been convicted, and there is no basis under Rule 33 or Rule 29 to set aside the jury's verdict or grant a new trial.

        Respectfully submitted,

        LISA G. JOHNSTON
        Acting United States Attorney

By:   /s/Andrew J. Tessman
      ANDREW J. TESSMAN
      Assistant United States Attorney
      WV State Bar No. 13734
      300 Virginia Street, East, Room 4000
      Charleston, WV 25301
      Telephone: 304-345-2200
      Fax: 304-347-5104
      E-mail: andrew.tessman@usdoj.gov

      /s/Erik S. Goes
      ERIK S. GOES
      Assistant United States Attorney
      WV Bar No. 6893
      300 Virginia Street, East
      Room 4000
      Charleston, WV 25301
      Telephone: 304-345-2200
      Fax: 304-347-5104
      Email: erik.goes@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "RESPONSE OF THE UNITED STATES TO MOTION FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL," has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 17th day of September , 2021 to:

>Timothy J. LaFon
>CICCARELLO DELGIUDICE & LAFON
>1219 Virginia Street, East, Suite 100
>Charleston, WV 25301
>E-mail: tlafon@cdlwv.com

/s/Andrew J. Tessman