IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                            CRIMINAL ACTION NO. 2:20-cr-00054

NEDELTCHO VLADIMIROV,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion for Judgment of Acquittal or, In the Alternative, for a New Trial and Memorandum in Support Thereof* (Document 148), the *Response of the United States to Motion for Judgment of Acquittal and For a New Trial* (Document 149), and all attendant documentation. The Court has also reviewed the Defendant's pro se *Notice of Appeal and Request for Different Lawyer* (Document 141) and the pro se motions attached to the Defendant's motion for judgment of acquittal. For the reasons stated herein, the Court finds that the motions should be denied.

**BACKGROUND**

A three-count Indictment was filed against the Defendant on March 10, 2020, charging him with Wire Fraud Conspiracy, Interstate Transportation of Stolen Goods, and International Money Laundering. On February 24, 2021, a Superseding Indictment was filed, charging the Defendant with Money Laundering Conspiracy, three counts of Money Laundering, and Fraud Conspiracy. Through Notice of Dismissal, filed on July 18, 2021, the United States dismissed Count Five,

which charged the Defendant with Fraud Conspiracy, pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure.

On February 25, 2021, the Court granted motions seeking the relief of appointed counsel. The Defendant was appointed new counsel on that same date. A three-day jury trial began on July 19, 2021. At the close of the United States' case, the Defendant made an oral motion for judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure as to Counts One, Two, Three and Four of the Superseding Indictment. The Court denied the motion for judgment of acquittal. The jury found the Defendant guilty on all four counts.

The Defendant filed his motion for judgment of acquittal or for a new trial on September 10, 2021, following three extensions of time to file Rule 33 motions. On September 17, 2021, the United States filed its response in opposition. The matter is ripe for consideration.

**APPLICABLE LAW**

Pursuant to Rule 29(c), the Court may set aside the verdict and enter an acquittal after the jury has returned a guilty verdict. Fed. R. Crim. P. 29(c). The district court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Millender*, 970 F.3d 523, 528 (4th Cir. 2020) (*quoting Jackson v. Virginia*, 443 U.S. 307 (1979)). That "standard leaves very little discretion on the part of the trial court." *United States v. Houdersheldt*, Crim. No. 3:19-00239, 2020 WL 7646808, at *5 (S.D. W. Va. Dec. 23, 2020) (Chambers, J.).

Rule 33(a) of the Federal Rules of Criminal Procedure provides that a district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P.

33(a).  "When the motion attacks the weight of the evidence, the court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence."  *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985).  However, a district court should exercise its discretion "sparingly, and a new trial should be granted only when the evidence weighs heavily against the verdict."  *United States v. Woods*, Crim. No. 1:12-00157-001, 2013 WL 12109522, at *1 (S.D. W. Va. Jun. 25, 2013) (Faber, J.).

## DISCUSSION

The Defendant moves this Court to grant a new trial in this matter and/or to set aside the verdict and enter an order of acquittal.  In support, the Defendant argues that the trial must be set aside because the verdict is not supported by substantial evidence of his guilt beyond a reasonable doubt.  The Defendant claims there was no evidence to support a conspiracy to commit money laundering or any evidence that the financial transactions were, in fact, money laundering.

Additionally, the Defendant argues that the Court erred in allowing retail investigators to testify as experts.  The Defendant asserts that the retail investigators did not have specialized knowledge that could properly be challenged as products of reliable principles and methods.  The Defendant asserts that such investigators/experts were allowed to improperly tender evidence as to what a reasonable person should conclude was "obvious."  The Defendant further argues that the "willful ignorance" or "willful blindness" jury instruction was improper because there was no evidence to support such an instruction in this case.  Lastly, the Defendant's motion incorporates a *pro se* motion to appeal, which contains eleven points of law the Defendant seeks to assert as grounds for appeal.

3

A. *Weight of the Evidence*

    i. *Money Laundering Conspiracy*

In Count One of the superseding indictment, the Defendant was charged with Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h). The statute provides in pertinent part that:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity [shall be guilty of a crime against the United States].

18 U.S.C. § 1956(a)(1)(A)(i). Furthermore, "Any person who conspires to commit any offense defined in this section [Section 1956] or Section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C. § 1956(h).

To satisfy its burden of proof for this offense, the United States must establish each of the following elements beyond a reasonable doubt:

> (1) That two or more persons conspired to conduct or attempt to conduct a financial transaction having at least a minimal effect on interstate commerce or involving the use of a financial institution which is engaged in, or the activities of which have at least a minimal effect on, interstate or foreign commerce;
>
> (2) That the property that was the subject of the monetary transaction involved the proceeds of specified unlawful activity;
>
> (3) That at some time during the existence or life of the conspiracy, agreement, or understanding, the defendant knew the property involved represented the proceeds of some form of unlawful activity;

4

(4) That the defendant engaged in the financial transaction with the intent to promote the carrying on of specified unlawful activity; and

(5) That the defendant knowingly and voluntarily joined the conspiracy.

The Defendant argues that there was no evidence to support a conspiracy to commit money laundering or any evidence that the financial transactions were, in fact, money laundering. Specifically, the Defendant argues there was no evidence as to an agreement concerning the Defendant's use of the funds he obtained from selling the merchandise. The Defendant further argues there was no evidence that the actual funds the United States claimed were laundered flowed directly from illegal transactions.

The United States presented evidence at trial that the Defendant and his co-conspirators operated a "fencing scheme" in the Southern District of West Virginia from around December 2016 until February 2020. A fencing scheme is a form of organized crime consisting of three parts: 1) the "boost" or the theft; 2) the "fence" or the middleman who quickly resells stolen items; and 3) an unsuspecting buyer of stolen property. Evidence was presented showing that the Defendant acted as the "fence" in this scheme.

The United States called several alleged boosters, or professional shoplifters, as witnesses in this case, who testified about their transactions with the Defendant. Each alleged booster testified that they would steal merchandise from retail stores and take those items to the Defendant who would purchase the items for approximately thirty percent of their resale value on eBay. The boosters would frequently steal multiples of the same item which were brand new and still in the original packaging when sold to the Defendant. One booster testified that he developed a device to remove security packaging or wires from stolen items, that he showed the Defendant how that

5

device worked, and gave a similar device to the Defendant. That same booster testified that the Defendant stated he had wire snippers to remove security devices from boxes. The boosters would receive cash for the stolen items and use that cash to purchase drugs. Typically, the transactions would occur in the Speedway and United States Post Office parking lots in Cross Lanes, West Virginia. The individual boosters testified that they personally sold items to the Defendant between forty and one hundred times.

The United States also presented testimony and evidence establishing that the Defendant would sell the items on eBay, and the boosters were all aware that the Defendant resold the items. The proceeds from those sales would be deposited into the Defendant's PayPal account, which he would then deposit into his checking account at City National Bank. The Defendant made approximately 7,000 sales on eBay from 2016 to 2020, totaling approximately $549,000 in proceeds.

The United States called several organized retail crime specialists as expert and fact witnesses. Those witnesses testified that they were present during the execution of the search warrant at the Defendant's residence and noticed several factors that were consistent with a fencing operation, or an operation wherein a booster steals items and sells them to a fence who re-sells the stolen property. Specifically, these witnesses observed that the volume of items present at the Defendant's home, the array of items, and the fact that the merchandise was brand new in original packaging were all indicative of a fencing operation. They testified that the Defendant's home had a room filled with merchandise, shipping boxes, and a cleaning station. According to these witnesses, a cleaning station is used to remove labels and security devices from stolen property. Moreover, they testified that the price for which the Defendant was selling the items on eBay was

lower than the wholesale price for which the retail store could purchase the items. This type of pricing is consistent with a fencing operation, according to those witnesses experienced in investigating such operations.

According to the boosters, the Defendant would always pay them approximately thirty to forty percent of the eBay resale value of the item, using the eBay application on his phone to determine the price. This testimony was consistent between all of the boosters and the Defendant. The Defendant would resell the items on eBay for approximately fifty to eighty percent of the retail value. Furthermore, the boosters knew that the Defendant used money from an account at City National Bank to purchase the items. The boosters testified that the Defendant would frequently plan to meet them at City National Bank so that he could withdraw cash from the ATM to pay them. As noted previously, the boosters were also aware that the Defendant later sold the property on eBay. It could reasonably be inferred, from the evidence presented, that the Defendant used money obtained by selling the stolen goods on eBay to purchase additional stolen goods from the boosters, and that the boosters understood that their stolen goods were purchased, at least in part, with the proceeds derived from previous sales of stolen goods.

This arrangement is consistent with the type of implicit scheme that may constitute a conspiracy. It is not necessary that the boosters knew what the Defendant did with the items beyond the initial transaction of purchasing the stolen goods using money from a financial institution, and it is not necessary that the Defendant knew all of the details involved in the boosters' procurement of the goods. "Because it is the agreement to commit the crime that creates the conspiracy, the defendant need not know the details of the underlying crime or 'the entire breadth of the criminal enterprise.'" *United States v. Moussaoui*, 591 F.3d 263, 298-97 (4th Cir.

2010) (*quoting United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996)). "A conspirator need not have had actual knowledge of the co-conspirators or the details of the conspiracy" and "a conspiracy conviction must be upheld even if the defendant played only a minor role in the conspiracy." *United States v. Morsley*, 64 F.3d 907, 919 (4th Cir. 1995).

The United States presented both direct and circumstantial evidence that the Defendant knew he was purchasing stolen items. Specifically, boosters testified that they: (1) called the Defendant immediately after a theft to arrange the sale of the stolen items; (2) typically met the Defendant within minutes of the theft; (3) received only a small fraction of the value of the brand new in-the-box items; (4) repeatedly provided the same brand new items to the Defendant; (5) received only cash payments from the Defendant; (6) and were addicted to heroin, experiencing noticeable withdrawal, and would use the cash from the Defendant to support their addictions. The volume and repeated nature of the sales, in conjunction with the Defendant's own testimony that he would purchase items that had security devices and labels, is further evidence of the Defendant's knowledge.

The United States presented direct and circumstantial evidence of the existence of a fencing operation. The evidence also demonstrated that the Defendant withdrew cash from a bank to purchase the items, he subsequently re-sold the stolen items, and he deposited the proceeds into a federally insured bank. The boosters and the Defendant fence played defined roles within the overall scheme. Viewing the direct and circumstantial evidence in the light most favorable to the United States, the Court finds that a rational jury could, in fact, under proper instructions from the Court, find the existence of a money laundering conspiracy beyond a reasonable doubt.

Therefore, the Court finds that the motion for judgment of acquittal or a new trial should be denied as to Count One.

### ii. Money Laundering

In Counts Two, Three, and Four of the superseding indictment, the Defendant was charged with Money Laundering, in violation of 18 U.S.C. § 1957(a). That statute provides in pertinent part that:

> (a) Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity . . . [shall be guilty of a crime against the United States].

*Id.* To satisfy its burden of proof for the offense charged in Counts Two through Four of the superseding indictment, the United States must establish each of the following elements beyond a reasonable doubt:

> (1) On or about the dates charged in the superseding indictment, the defendant engaged or attempted to engage in a monetary transaction in or affecting interstate or foreign commerce;
>
> (2) The monetary transaction involved criminally derived property of a value greater than $10,000;
>
> (3) The property was derived from specified unlawful activity;
>
> (4) The defendant acted with knowledge that the transaction involved the proceeds of a criminal offense; and
>
> (5) The transaction took place in the United States.

In moving the Court for a judgment of acquittal or new trial for the money laundering counts, the Defendant argues there was no evidence that the actual funds the United States claimed were laundered flowed directly from illegal transactions. The Defendant did not dispute that he

9

engaged in monetary transactions in the United States that affected interstate or foreign commerce, and which amounted to more than $10,000. Therefore, the Court's inquiry focuses on whether the United States presented sufficient evidence for a jury to make a finding that the monetary transactions involved criminally derived property.

As stated above, viewing the evidence in the light most favorable to the United States, it presented testimony and evidence establishing the existence of a fencing operation, wherein the Defendant purchased stolen property obtained from boosters. The Defendant then sold that stolen property on eBay, and the proceeds from those sales were deposited into the Defendant's PayPal and City National Bank accounts. Thus, the United States established that illegal property or criminal activity served as the source of funds in the Defendant's bank account.

Through the testimony of bank, eBay and PayPal records custodians and its investigator, the United States presented testimony and evidence detailing the Defendant's transactions at City National Bank and J.P Morgan Chase Bank, his eBay sales, and the timing of the transactions. Specifically, the United States established that the Defendant regularly made ATM withdrawals of $700 per day, and that proceeds from the Defendant's "nedined" eBay account were deposited into the Defendant's PayPal account. Those PayPal deposits were then transferred to the Defendant's City National Bank account, and the PayPal deposits constituted the majority or the entirety of the balance within the Defendant's bank account.

The business records admitted into evidence at trial established that more than $10,000 in deposits were made from PayPal into the Defendant's City National checking account in the months leading up to July 2019. More than $10,000 was transferred from the Defendant's City National checking account to his savings account during that same period. On July 8, 2019, the

Defendant transferred $155,000 from his City National savings account to his City National checking account. On that same date, he wrote a personal check for $155,000 from his City National checking account and deposited it into his JPMorgan Chase Bank account. On July 23, 2019, he transferred $153,000 from his JPMorgan Chase Bank account to a bank in Bulgaria.

Viewing all of this evidence in the light most favorable to the United States, there was evidence of at least three separate bank transactions on July 8 and July 23, 2019, from which a reasonable trier of fact could find beyond a reasonable doubt that the Defendant committed the offense of money laundering as alleged in Counts Two, Three and Four.

B. *Retail Investigator Testimony*

The Defendant argues that the Court erred in allowing retail investigators to testify as experts. The Defendant asserts that the retail investigators did not have specialized knowledge that could properly be challenged as products of reliable principles and methods. The Defendant asserts that such investigators/experts were allowed to improperly tender evidence as to what a reasonable person should conclude was "obvious."

As noted above, the United States called several organized retail crime specialists as expert and fact witnesses, including: (1) Jose Varela, Regional Manager, CVS Health, Organized Retail Crime Team; (2) Herb Shelton, Organized Retail Crime Investigator, Kroger; and (3) Nicholas Niehaus, Market Investigator, Target Corporation.[1] The expert witnesses testified that certain elements of the Defendant's eBay business were indicative of a fencing scheme, including: (1) the volume of brand-new merchandise; (2) pricing for brand-new items that was lower than wholesale

---

[1] Herb Shelton was not qualified as an expert witness, and his testimony was limited to his personal observations.

11

price; (3) a large volume of similar items, in contrast to a typical pawn shop; and (4) the presence of a cleaning station for removing labels and security tags.

The Federal Rules of Evidence provide that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise . . ." Fed. R. Evid. 702. "Under Rule 702, a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019). Courts have consistently approved of investigators offering expert testimony and opinions based on their experience in the field. *See id.*; *United States v. Galloway*, 749 F.3d 238, 245 (4th Cir. 2014); *United States v. Palacios*, 677 F.3d 234, 242 (4th Cir. 2012); *United States v. Baptiste*, 596 F.3d 214, 222-23 (4th Cir. 2010).

The experts in this case set forth the foundations of their extensive experience investigating organized retail crime. Based on their extensive experience investigating fencing schemes, these witnesses were qualified as experts. The witnesses then testified about elements that are commonly indicators of a fencing operation. The Court thus found that the testimony was both relevant and reliable. Furthermore, this Court provided an instruction to the jury to assist them in distinguishing between expert testimony and fact testimony. Therefore, the Court finds that the Defendant's motion regarding expert testimony should be denied.

C. *Jury Instruction*

The Defendant further argues that the "willful ignorance" or "willful blindness" jury instruction was improper because there was no evidence to support such an instruction in this case. The Court provided the following instruction to the jury:

> The United States may prove that the defendant acted "knowingly" by proving, beyond a reasonable doubt, that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. A finding beyond reasonable doubt of the intent of the defendant to avoid knowledge or enlightenment would permit the jury to infer knowledge. Stated another way, a defendant's knowledge of a particular fact may be inferred from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.
> One may not willfully or intentionally remain ignorant of a fact material or important to his conduct to escape the consequence of criminal law. If you find beyond a reasonable doubt that the defendant was aware of a certain fact but he deliberately and consciously avoided confirming this fact so he could deny knowledge if apprehended, then you may treat this deliberate avoidance as the equivalent of knowledge, unless you find the defendant actually believed this fact not to be true. A showing of negligence, mistake or even foolishness on the part of the defendant is not enough to support an inference of knowledge.

The boosters in this case detailed the circumstances under which they sold items to the Defendant, which put the Defendant on notice that the items were stolen. One of the boosters testified that he stated to the Defendant that the item he was trying to sell the Defendant was, in fact, stolen. The Defendant then stated that he did not purchase stolen items, but he proceeded to purchase the item from the booster anyway. The volume of brand new merchandise purchased by the Defendant, along with the sheer volume of similar brand new items supported the Defendant's knowledge that such items were stolen. Moreover, testimony was presented establishing that criminals have an unspoken agreement to not discuss their criminal activity with

13

one another. The Defendant then testified and admitted that he used the cleaning station to remove security bars from merchandise. Despite this testimony and evidence, the Defendant testified that he did not know that the items he purchased were stolen. The "willful ignorance" or "willful blindness" instruction was warranted and properly given as a result of this evidence.

### D. Pro Se Motions

On August 13, 2021, the Defendant filed a pro se motion of appeal and a motion for appointment of new counsel. The Defendant simply states that he requests that new counsel be appointed to represent him for the appeal to the Fourth Circuit Court of Appeals. The Court has also reviewed the Defendant's pro se motion to appeal, attached to the Defendant's Rule 33 motion as an exhibit. Therein, the Defendant asserts eleven points of law upon which he seeks to base his appeal.

The Court finds that these motions should be denied. The Defendant set forth no basis for his motion for appointment of new counsel. The eleven points of law asserted in the pro se motion provide little argument and set forth conclusory statements of law. Moreover, the Court generally will not consider motions filed pro se by a Defendant who is represented by counsel.[2]

### CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Motion for Judgment of Acquittal or, In the Alternative, for a New Trial* (Document 148) be **DENIED**.

---

[2] An appeal is premature until after sentencing and judgment, and the Defendant and/or his attorney will have the opportunity to request that the Fourth Circuit appoint new appellate counsel after a notice of appeal is filed.

The Court further **ORDERS** that the *Motion in Limine to Exclude Evidence of Prior Conviction* (Document 107), *Motion in Limine to Exclude Evidence of South Charleston Police Department Cover Page* (Document 108), and *Amended Motion in Limine to Exclude Evidence of South Charleston Police Department Cover Page* (Document 109) be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:    September 30, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA