## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**UNITED STATES OF AMERICA**

**v.**                                                              **CRIMINAL NO. 2:20-cr-00054**

**NEDELTCHO VLADIMIROV**

## SENTENCING MEMORANDUM OF THE UNITED STATES

I.      **The U.S. Probation Officer Properly Calculated a Total Offense Level.**

The U.S. Probation Officer properly calculated the total offense level as 30, *see* PSR ¶ 67, and the Criminal History Category as I. *See* PSR ¶ 71. Based on these calculations, Vladimirov's advisory guideline range of imprisonment is 97-121 months. S*ee* PSR at ¶ 108.  Vladimirov objects to various aspects of the U.S. Probation Officer's guideline calculations.  These objections have been specifically addressed in the Addendum to the PSR.

A.      **The obstruction of justice enhancement was properly applied.**

The obstruction of justice enhancement under USSG §3C1.1 should be applied when "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense…" USSG §3C1.1. The enhancement is intended to cover perjury, as it happened in in this case when Vladimirov testified. *See id*. cmt. n.2, n.4.  *See also United States v. Castner*, 50 F.3d 1267, 1278–79 (4th Cir. 1995).

Vladimirov testified in trial repeatedly that he did not know the items he received from the individual boosters were stolen and he was not running a fencing operation. *See* TRANSCRIPTS OF PROCEEDINGS, VOLUME III (July 21, 2021), at 498:24-25 - 499:1-4; 500: 22-24; 502:25 - 503:1;

504:11-12; 507:20-22; 508:7-13; 510:11-12. This testimony was specifically directed at the material issue concerning his guilt—his knowledge that the property he received was stolen.

Evidence was presented at trial proving that Vladimirov would have known that the items he was receiving from boosters were, in fact, stolen. *See* ECF 151 (order denying Vladimirov's motion for a new trial and highlighting evidence presented at trial demonstrating Vladimirov's knowledge that the items were stolen). Therefore, Vladimirov's materially false testimony rises to perjury and the enhancement applies. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993). The United States requests that the Court make a finding that Vladimirov "gave false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *See Castner*, 50 F.3d at 1279.

### B.    The PSR properly calculates the amount of laundered funds.

The PSR properly calculates the amount of laundered funds. USSG §2S1.1(a)(2) applies, rather than (a)(1), because the offense level for the underlying fraud crimes cannot be determined. *See* USSG §2S1.1(a). At trial, four "boosters" testified to the timeframe, the number of times, and items they were stealing and providing to Vladimirov. However, the total fraud loss amount or even a rough estimate cannot be determined based on their testimony. Each of the boosters also testified that they knew other boosters who were providing stolen items to Vladimirov, so the relevant fraud conduct is far greater than what can be attributed to the four boosters who testified.

Retail experts testified that Vladimirov was engaging in an operation consistent with a fencing operation. Even if Vladimirov was engaging in some amount of legitimate business, whatever legitimate business he was engaging in merely provided cover for the illegitimate business, and he was comingling the illegitimate and legitimate funds. Application Note 3 to USSG §2S1.1 addresses commingled funds for purposes of calculating the amount of laundered funds

2

when illegitimate funds are commingled with legitimate funds and provides that "[i[f the amount of the criminally derived funds is difficult or impracticable to determine, the value of the laundered funds, for purposes of subsection (a)(2), is the total amount of the commingled funds." USSG §2S1.1 cmt. n.3(B) (emphasis added).

Vladimirov objected to the calculation but provided no alternative calculation of the amount of criminally derived funds. Thus, he, in effect, concedes that the amount of the criminally derived funds is difficult or impracticable to determine. The U.S. Probation Officer is correct that the value of the laundered funds is equal to the total amount of eBay sales from December 2016 to February 2020 (the total amount of commingled funds).[1] *See United States v. Baker*, 227 F.3d 955, 970 (7th Cir. 2000); *United States v. Owens*, 159 F.3d 221, 229 (6th Cir. 1998).

### C.    The organizer/leader enhancement is properly applied.

The organizer/leader enhancement applies when a defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG §3B1.1(a). Application Note 2 to USSG §3B1.1 provides that the enhancement may apply "in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization."

Each booster outlined the structure of their arrangement with Vladimirov at trial. Vladimirov then sold the stolen items online, removed retail labels from the items with a "cleaning station" located in his home, shipped the items to unwitting online buyers across the United States and overseas, transferred the sales proceeds to his local bank account, and then routinely withdrew

---

[1] The very act of commingling illegitimate and legitimate funds is money laundering. *See United States v. Jackson*, 935 F.2d 832, 841 (7th Cir. 1991).

cash to conduct additional transactions. There were thousands of online sales resulting in huge profit for Vladimirov. Thus, Vladimirov exercised management responsibility over the property, assets, or activities of the criminal organization. *See* USSG §3B1.1 cmt. n.2.

## II.     The Court Should Impose a Stern Sentence within the Guideline Range.

### A.     Section 3553(a)(1) – the nature and circumstances of the offenses.

Vladimirov was singularly-focused on one thing above all else—profit. His criminal acts were motivated by a disturbing level of greed. His crimes involving fraud and money laundering were not simply unique, stand-alone crimes. They formed an extensive pattern, made all the worse by the fact that he knowingly took advantage of vulnerable people to carry out the criminal enterprise that substantially benefited himself.

With the knowledge that the boosters providing him the stolen items were addicted to opioids and using the cash provided by him to immediately purchase opioids, Vladimirov contributed to the opioid crisis in the Southern District of West Virginia. He took advantage of a disparity of power between himself and the boosters. Because the boosters were in a mental and physical state of desperation, Vladimirov was able to manipulate the negotiation of cash prices of around 30% of a retail item just stolen off the shelf. By acquiring the items cheaply, Vladimirov was able to quickly double his profit—selling the items to unsuspecting eBay users across the United States. Vladimirov repeatedly sat in his car with the same opioid-addicted people, observing their desperate mental and physical states, receiving stolen items from them, and then providing with them just enough cash to feed their opioid habits and keep them coming back for more. The fact that the next dose of opioids could literally kill the boosters did not deter Vladimirov. He instead told the boosters to tell their friends about him so that he could expand his network, which would result in more bottom-line profit for Vladimirov.

The totality of Vladimirov's behavior reveals a sense of entitlement. He committed the acts resulting in his conviction because he was motivated only to collect as much as wealth for himself as he possibly could, all while endangering the welfare of other human beings.

**B.     Section 3553(a)(2)(C) – the need to protect the public from further crimes.**

Vladimirov has demonstrated no remorse for his criminal conduct. *See* PSR ¶¶ 49-50. His disregard for the health and welfare of others combined with the level of greed encompassed in his crimes demonstrates a dissociated view of the norms and rules of society. The Court should fashion a sentence that protects the public from further crimes of Vladimirov.

**C.     Section 3553(a)(2)(A) and (B) –seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence.**

The need for the sentence to reflect the gravity of Vladimirov's criminal conduct promote respect for the law and provide a just punishment further support imposing a significant sentence of imprisonment. This conduct for such a sentence to reflect the serious nature of the crimes and to provide a just punishment. The additional factors of promoting respect for the law and affording adequate deterrence are perhaps even more important.

General deterrence is a vital factor to the sentencing in this case. The crimes associated with a fencing scheme of this magnitude are extraordinarily difficult to identify, investigate, and prosecute. This form of organized criminal enterprise contains several layers of criminal conduct: (1) white collar crime (at the top); (2) retail theft; and (3) drug trafficking. This criminal environment is an incubator for additional criminal activity and takes advantage of individuals who are addicted to opioids to carry out the dirty work of the criminal enterprise. These schemes increase the demand for opioids, which increase the likelihood of overdose (and death) and the need for medical care and treatment; all of which impose a tremendous social cost on society.

**<u>Conclusion</u>**

A sentence of imprisonment within the sentencing guideline range of 97-121 months is sufficient, but not greater than necessary, to meet the goals of sentencing. The United States is not seeking restitution and does not anticipate calling witnesses at the hearing. It estimates that the hearing will take 30-45 minutes.

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney

By:    <u>/s/Andrew J. Tessman</u>
ANDREW J. TESSMAN
Assistant United States Attorney
WV State Bar No. 13734
300 Virginia Street, East, Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
E-mail: andrew.tessman@usdoj.gov

<u>/s/Erik S. Goes</u>
ERIK S. GOES
Assistant United States Attorney
WV Bar No. 6893
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: erik.goes@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing "SENTENCING MEMORANDUM OF THE

UNITED STATES" has been electronically filed and service has been made on opposing counsel

by virtue of such electronic filing this 4th day of January, 2022 to:

> Timothy J. LaFon
> CICCARELLO DELGIUDICE & LAFON
> 1219 Virginia Street, East, Suite 100
> Charleston, WV 25301
> tlafon@cdlwv.com

/s/Andrew J. Tessman
